Shirley M. TUCKER and Jim
Tucker, Plaintiffs,

v.

AETNA CASUALTY & SURETY
COMPANY, Defendant.

Civ. A. No. J83–0624(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 6, 1985.

Wayne E. Ferrell, Jr., Jackson, Miss., for plaintiffs.

David A. Barfield, Thomas L. Kirkland, Jr., Jackson, Miss., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARBOUR, District Judge.

This cause came on for trial on the Amended Complaint of the Plaintiffs, Shirley M. Tucker and Jim Tucker, against Aetna Casualty & Surety Company on April 4, 1985, and continued thereafter to conclusion on April 9, 1985.

Plaintiff Shirley M. Tucker brought this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against her automobile insurance carrier, Defendant, Aetna Casualty & Surety Company, seeking actual damages under her uninsured motorist coverage for personal injuries and medical expenses incurred, seeking to recover medical expenses under her medical payments coverage, and seeking punitive damages for Aetna's bad faith refusal to honor Plaintiff's claim for injuries and damages, and intentional tort in using an undisputed claim to settle or reduce a disputed claim and in attempting to reduce statutory uninsured motorist coverages. Defendant removed the action to this Court. The complaint was subsequently amended to join as a Plaintiff Jim Tucker, the husband of Shirley M. Tucker, to assert an additional claim for damage to credit reputation occasioned by lawsuits filed against Jim Tucker due to Aetna's failure to pay medical expenses under its policy.

## FINDINGS OF FACT

Plaintiffs Shirley M. Tucker and Jim Tucker were insured under a policy of automobile insurance issued on July 21, 1982, by Aetna Casualty & Surety Company, Policy Number 87–SR–15237931 PCA, which provided, among other coverages, uninsured motorist coverage and medical payments coverage on two vehicles owned by Plaintiffs. This insurance policy was identical in every respect to the automobile insurance policies Aetna is selling here in Mississippi at the present time.

Plaintiffs purchased separate coverage with the Defendant, Aetna, on the two vehicles, and the policy provided uninsured motorist coverage on each vehicle in the amount of $10,000. Aetna's writing agent, Horace M. McMurphy testified that a separate dollar amount was included in the total premium to provide uninsured motorist coverage. Although no separate dollar amount is set forth, the policy itself states that the premium for uninsured motorist coverage for each automobile is "included" in the total premium.

The policy provided medical payments coverage in the amount of $2,000. This coverage was excess to any other medical insurance covering the injured insured.

On January 8, 1983, Plaintiff Shirley M. Tucker was involved in an automobile accident with an uninsured motorist in which she received injuries for which she is entitled to compensation under medical payments and uninsured motorists coverages of the subject automobile insurance policy. The accident was entirely the fault of the driver of the other vehicle who was uninsured. Complicating the issue of damages in this case are the facts that the Plaintiff was involved in a second automobile accident on February 3 and that she had a prior medical history of psychological problems and a bad back. It appears from the conflicting evidence that the second accident on February 3 was somewhat less severe than the first accident. Shirley Tucker made a claim concerning this second accident to another insurance company and received a settlement for her injuries resulting from the second accident.

Plaintiff Shirley M. Tucker, by and through her counsel, initially submitted to Aetna for payment medical bills for treatment of injuries incurred as a result of the accident in question totalling $693.60. Included in the original bills submitted to Aetna were ambulance bills and other bills incurred as a result of the second accident. When presented with the claim for payment of medical expenses under the aforesaid policy, Aetna refused to pay Plaintiff unless and until its form agreement entitled "Auto-Rite Policy Medical Expense Agreement" was signed by Plaintiff Shir-

ley M. Tucker. The Auto-Rite Policy Medical Expense Agreement provided that Shirley M. Tucker would agree that payments made under the medical payments coverage of the policy would be applied toward the settlement of "any claim" or the satisfaction of any judgment for damages entered in her favor which she had made or would thereafter make on account of the accident against any person or organization to whom the liability coverage provided by the automobile insurance policy applied.[1]

It is undisputed that the policy Aetna issued to the Tuckers (and to all of the other Mississippians who purchased an Auto-Rite policy from Aetna) contains provisions which limit uninsured motorist coverage in a manner violative of settled Mississippi law. Under the endorsement styled "Protection Against Uninsured Motorists Insurance (Mississippi)" is found the following illegal provision in "III. Limits of Liability":

(e) The Company shall not be obligated to pay under this insurance that part of the damages which an insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the Medical Payments Coverage.

The Protection Against Uninsured Motorists Insurance (Mississippi) endorsement was revised in January, 1980. It is noted that this is the Mississippi endorsement drafted, edited and intended to be included in the Aetna Auto-Rite policies issued in

the State of Mississippi. Aetna acknowledged in its testimony that it knew that the provision was illegal under Mississippi law. Despite its knowledge of the illegality of the provision, Aetna has intentionally incorporated the illegal provision into its policies as late as July 21, 1982.

It is clear to this Court that Aetna intended for its adjusters to abide by and enforce the aforesaid illegal provision of its policy, since it so instructs its adjusters in its Methods and Procedures Claim Manual, Section 4275. Under the uninsured motorists (AU, AUP) section, the Methods and Procedures Claim Manual states "also, clearly show that the uninsured motorist payments was reduced by the amount of the medical payment."

As a condition precedent to its payment of med-pay benefits, Aetna required that the Tuckers execute an agreement which would have had the necessary legal effect of binding the Tuckers to the illegal limitation embodied in the Aetna policy. When the Tuckers refused to execute the Aetna agreement, on the grounds that it was illegal under Mississippi law, Aetna flatly refused to pay the med-pay benefits and cited the Tuckers' refusal as ground for denial of Mrs. Tucker's legitimate claim under the policy. When Mrs. Tucker's lawyer pointed out the illegality of the agreement, Aetna stood on the terms of its policy, and insisted upon execution of the agreement as a condition precedent to making payments under the policy.

---

**1.** The Defendant takes the position that its medical payments coverage is excess to any other medical insurance coverage which the Plaintiff had at the time of the accident. The basis for this contention is Exclusion (n) which appears on page three of the policy. The Plaintiff has asserted that this provision has been replaced by the Mississippi Uninsured Motorist Endorsement contained in the policy. The policy in question is divided into two parts. Under Part One, the policy contains four separate coverages—liability coverage, medical expense coverage, uninsured motorist coverage, and accidental death benefit coverage. On pages two and three of the policy, the exclusions which are applicable to the various coverages are set forth. Exclusion (n) appears on Page 3 and relates to

the medical expense coverage. Exclusion (n) applies only to medical expense coverage and not uninsured motorist coverage. Therefore, Exclusion (n) was not replaced by the Mississippi Uninsured Motorist Endorsement since it was never applicable to uninsured motorist coverage. The Mississippi Uninsured Motorist endorsement of the policy has no effect on the other coverages under Part One of the policy, such as liability coverage, medical expense coverage or accidental death benefit coverage, and has no effect on the exclusions and conditions imposed upon those other coverages. Accordingly, the coverage under the Medical Payments Coverage of the policy is excess to other medical insurance which the Plaintiff may have.

Plaintiffs have alleged that the Defendant, Aetna Casualty & Surety Company, has attempted by its use of the Auto-Rite Agreement to reduce uninsured motorist coverage by any payment it makes under medical payments coverage. Plaintiffs' position is supported by the language found in a supervisor's memo to the adjuster in this case found in Aetna's claim file:

Your position re the Auto-Rite Agreement is correct. Remember you don't double pay the medical—once it is paid under med pay its not paid under AU [uninsured motorist].

Aetna contends, however, that Mrs. Tucker has not been harmed by these illegal provisions, since Aetna alleges it made no attempt to enforce these invalid terms in her case. Aetna argues that its refusal to pay med-pay benefits without execution of the Auto-Rite Agreement was justified under the terms of Aetna's policy. Indeed, Aetna has relied upon Mrs. Tucker's refusal to execute the Auto-Rite Agreement as a breach of this insurance contract which it alleges is sufficiently egregious to relieve Aetna of any liability under the policy.

Aetna contends that its refusal to pay med-pay benefits without execution of the Auto-Rite agreement is authorized by the following policy provision:

MEDICAL EXPENSE COVERAGE

... provided that no such payment shall be made unless the person to whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor *against any Insured* because of bodily injury arising out of any accident to which the Liability Coverage applies.

The Auto-Rite Agreement submitted for Mrs. Tucker's signature provides:

that such payment [$2,000 med pay benefits] shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in my favor which I have made or shall hereafter make or obtain on account of this accident *against any person or organization to whom the Liability Coverage provided by this automobile insurance policy shall apply;*

Although at first blush the Auto-Rite Agreement seems to be identical to the policy term in question, upon close consideration it is apparent that execution of the Auto-Rite Agreement would alter the legal relationship between Aetna and Mrs. Tucker in a manner which would be fundamentally different from the execution of an agreement in conformity to the language of the policy. This fundamental difference arises because the terms of the policy only require that the med-pay payments be credited against the liability of "any insured" while the Auto-Rite Agreement requires that the med-pay payments be credited against the liability of "any person or organization to whom the Liability Coverage provided by this automobile insurance policy shall apply." With respect to Mrs. Tucker's claim, Aetna was in fact liable under the liability portion of its policy, specifically the uninsured motorist coverage required under Mississippi law. Execution of the Auto-Rite Agreement would have had the necessary legal effect of contractually binding Mrs. Tucker to apply the $2,000.00 med-pay benefit she was entitled to receive against Aetna's liability under her uninsured motorist coverage. Since the Aetna policy affords only the statutory minimum in uninsured motorist coverage to begin with, requiring that Mrs. Tucker agree to this offset as a condition precedent to receiving her med-pay benefits is nothing more or less than a requirement that Mrs. Tucker give up her legal rights in order to obtain the med-pay benefits for which she paid her premiums. It is apparent that both the terms of the Aetna policy and the terms of the Auto-Rite Agreement contemplate and are consistent with the reduction in uninsured motorist coverage (especially when read with the methods and Procedures Claims Manual, Section 4275) specifically forbidden under Mississippi law.

What would be a clear case of bad faith failure to pay entitling the Plaintiffs to punitive damages is complicated in the case by the Plaintiff's intransigence in refusing to provide narrative medical reports and a medical privilege waiver when requested by the Defendant as required by the policy. The Plaintiff failed and refused to produce documentation such as narrative medical reports, disclose the identity of her other medical insurance coverage and refused to provide the Defendant with a subrogation assignment. The Court further finds that the Plaintiff's failure to timely waive the medical privilege was unreasonable and prevented the Defendant from attempting to learn what medical bills were actually related to the accident in question. The Plaintiff's failure to timely waive the medical privilege prohibited the Defendant from undertaking discovery of the treating physicians; prohibited the Defendant from uncovering the Plaintiff's pre-existing psychological and physical conditions; and prevented the Defendant from discovering the source of other insurance payments for the medical bills allegedly incurred by the Plaintiff, which would have enabled the Defendant to coordinate the benefits as provided by the policy of insurance in question. Approximately one week before the trial of this action the Plaintiff provided the Defendant a "limited medical authorization" which purported to allow the Defendant to contact the Plaintiff's treating physicians but limited the Defendant's attorneys to conversations and discussions regarding events that transpired since the accident in question. This action further prevented the Defendant from uncovering the Plaintiff's pre-existing psychological and physical condition which is highly relevant to the case at bar.

Notwithstanding the Plaintiff's breach of her obligation under the policy to provide sufficient medical information to enable the insurer to evaluate the claim, this breach is not so egregious as to deny the Plaintiff the right to recover such damages as she was able to establish at trial.

The proof at the trial of this case showed that the Plaintiff did have other medical insurance which had a $750.00 yearly deductible, and after the deductible was paid, the other insurance paid 80% of her medical bills. This testimony came from the Plaintiff, Shirley Tucker, and is undisputed.

The Court finds that Plaintiff, Shirley Tucker, suffered damages as a proximate result of the injuries she received in the January 8, 1983, accident including damages for medical expenses, lost earning capacity, pain and suffering and mental anguish. She is entitled to recover all of the medical expenses incurred between January 8, 1983, and February 3, 1983, the date of the second accident. (Although she testified that a Dr. Temple treated her during this period, no bill was introduced into evidence which would prove the amount of his charges). The second accident aggravated the pre-existing injuries caused by the first accident.

Plaintiff's pre-existing psychological problems were aggravated by the first accident and were partly responsible for her treatment by Dr. Gray Hillman, a psychiatrist, and her St. Dominics Hospital hospitalization from April 16 to May 9, 1984.

Plaintiff's pre-existing back problems were aggravated by the first accident and the aggravation was responsible for her treatment by Dr. Donald Humberg, a chiropractor, on January 25, 1983.

Plaintiff was rendered totally disabled for 27 weeks following the first accident as a direct and proximate result thereof. Her wage earning capacity immediately before the first accident was $200.00 per week as evidence by her draw from the family business. She accordingly suffered a total wage earning capacity loss of $5,400.00.

Plaintiff incurred medical bills after February 4, 1983, as itemized hereafter. Thirty-three percent of those expenses were a direct and proximate result of the first accident. The balance of those expenses were incurred as a result of the second accident and of her pre-existing psychological problems.

The Plaintiff has suffered no permanent disability, either physical or mental, as a

result of the first accident. Although there was slight evidence of permanent impairment, that evidence was not credible.

Plaintiff is entitled to recover under the medical payments portion of her policy 80% of the total medical expenses attributable to the first accident less the $750.00 deductible. She is entitled to have all of those expenses attributable to the first accident considered as a part of her recoverable damages under the uninsured motorist provisions of her policy. Recoverable medical expenses may be charted as follows:

**Medical Expenses incurred Jan. 8, 1983 to Feb. 3, 1983:**

| | |
|---|---:|
| Hinds General Hospital | $151.60 |
| Dr. Donald Humberg, Chiropractor, Jackson Radiology Associates | 135.00 |
| | 38.00 |
| Super D Drug bills | 30.97 |
| St. Dominic Emergency Room | 40.00 |
| Lakeland Orthapaedic Clinic | 135.00 |
| | $530.57 |

**Medical Expenses incurred after Feb. 3, 1983:**

| | |
|---|---:|
| Dr. Edward T. James | 535.00 |
| St. Dominics (4/16/84—5/9/84) | 3,524.50 |
| Dr. Gray Hillman | 3,090.00 |
| Lakeland Radiologists | 79.00 |
| | 7,138.50 |
| | X .33 |
| | 2,355.70 |
| Total Medical Expenses attributable to January 8, 1983 accident— | 2,886.27 |
| Less deductible under med-pay— | 750.00 |
| | $2,136.27 |
| | X .80 |
| Total Medical Expenses payable Under med-pay— | $1,708.92 |

Accordingly, Shirley Tucker is entitled to recover the sum of $1708.92 under the medical payments provision. Under the uninsured motorist provision, she has suffered special damages of medical expenses totaling $2886.27 and lost wage earning capacity of $5400.00. Considering these special damages and her pain and suffering and mental anguish, the Court finds that she has sustained total damages as a result of the January 8, 1983, accident of $40,-000.00. However, due to the $20,000.00

limit obtained by stacking the uninsured motorists coverages, the recoverable damages under the policy are $20,000.00.

The Court finds that there was absolutely no testimony or evidence to support a cause of action for damages on behalf of Jim Tucker and, as a result thereof, the Defendant is entitled to a judgment of dismissal with prejudice as against the Plaintiff, Jim Tucker.

## CONCLUSIONS OF LAW

### STACKING

■ In *Government Employees Ins. Co. v. Brown,* 446 So.2d 1002 (Miss.1984), The Mississippi Supreme Court held:

We reiterate from Bridges [*Hartford Acc. & Indem. Co. v. Bridges,* 350 So.2d 1379 (Miss.1977)] that a presumption arises that coverage of multi-vehicles in one policy, where separate premiums were paid for each endorsement of uninsured motorist coverage, is the same as if such coverage was provided in separate policies covering the same vehicles. Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid.

*Id.* at 1006. In the case at bar the following language in *Government Employees* authorizes stacking of uninsured motorist coverage to provide $20,000 coverage:

First, uninsured motorist coverage contained in one policy of insurance insuring three vehicles, and for which a separate premium was paid, can be aggregated.

*Id.* at 1006. Here, there is no question that there is included in each premium for each automobile an amount which provides for uninsured motorist coverage even though that amount is not expressly stated in dollars. The Court is of the opinion, and so finds, that as a result of having purchased separate uninsured motorist coverage on each of two vehicles, and having paid separate premiums for the uninsured motorist coverage on each of the two vehicles, Plaintiffs are entitled under Mississippi law to stack or combine the uninsured motorist

**1580**

coverages for a total of $20,000.00 uninsured motorist coverage. There is absolutely no legal authority cited by the Plaintiff or known to the Court, however, which would authorize the stacking of medical payments coverage in the insurance policy in question. The basis for stacking uninsured motorist coverage derives from the fact that the uninsured motorist statutes of the State of Mississippi rule and govern over the policy of insurance in question. There are no statutory provisions in Mississippi which effect medical payments coverage contained in insurance policies. Accordingly, stacking of medical payments coverage is not proper and the Plaintiff is entitled only to compensation within the policy limit of $2,000.00.

## PUNITIVE DAMAGES

### A. *Medical Payments Claim.*

■ It is the responsibility of the trial judge to determine whether or not there was an arguably reasonable basis, either legal or factual, for the defendant's failure to pay the claim. *Blue Cross and Blue Shield of Mississippi, Inc. v. William T. Campbell*, 466 So. 833, on petition for rehearing, decided April 10, 1985, in the Supreme Court of Mississippi, Cause No. 54,-744. If the trial judge finds that there was a reasonably arguable basis to not pay the claim, whether such reasonably arguable basis be in fact or in law, then the plaintiff is not entitled to punitive damages. *Id.* "Any plaintiff asking for punitive damages or any special or extraordinary damages based upon 'bad faith' of an insurance company has a heavy burden." *Id.* It is the opinion of this Court that the Defendant had a legal and factual basis for not paying the medical payments claim as presented.

■ Additionally, the Plaintiffs are not entitled to punitive damages in that an arguable basis to deny payment exists when there is a dispute as to whether the plaintiff has satisfied a condition of the policy. *New Hampshire Insurance Co. v. Smith*, 357 So.2d 119 (Miss.1978). In *Smith*, the Court held that the insurer was entitled to medical reports or an authorization to consult with the plaintiff's physician. When the insured offered neither, the insurer was not wrong in refusing to pay the claim. The *Smith* case is directly on point with the case at bar and punitive damages are improper. *See also O'Conner v. Equitable Life Assurance Society*, 592 F.Supp. 595 (N.D.Miss.1984).

### B. *Uninsured Motorist Claim.*

■ The question now before this Court is whether Aetna's issuance of a policy of insurance in violation of settled Mississippi law and its insistence that Mrs. Tucker execute an agreement under which she would be bound to the illegal provision, coupled with Aetna's refusal to pay benefits admittedly owed until the agreement was executed, constitutes bad faith on the part of Aetna as a matter of law with regard to the uninsured motorist coverage.

The policy provision in question violates the Mississippi rule of substantive law announced in *Harthcock v. State Farm*, 248 So.2d 456 (Miss.1971) and *Talbot v. State Farm*, 291 So.2d 699 (Miss.1974). Both *Harthcock* and *Talbot* were concerned with the interpretation of § 83–11–101, Mississippi Code Annotated (1972), mandating the inclusion of certain minimum amounts of uninsured motorist coverage in every automobile insurance policy issued in Mississippi.

In *Harthcock*, the court considered whether an insuror could rely upon an "other insurance" clause in an automobile policy to reduce the uninsured motorist coverage under its policy by the amounts the insured collected from "other insurance." The court held that the insuror could not validly reduce uninsured motorist coverage below the statutory minimum by inserting a policy provision reducing its uninsured motorist coverage by the amount received from such "other insurance." If this holding were not clear enough, in *Talbot* the court specifically held that a policy provision reducing uninsured motorist coverage by the amounts paid under the medpay provisions of a single policy was invalid

and a violation of § 83–11–101, Mississippi Code Annotated (1972), as amended.

Aetna, through the testimony of its adjuster, agreed that the provision of subsection (e) of "III. Limits of Liability" was unlawful and that the provision clearly violated Mississippi law.

Aetna contends, however, that the presence of these illegal terms in its insurance policy does not indicate bad faith or gross negligence on its part, since it never attempted to enforce that provision, nor did it enforce subsection (a) of the Auto-Rite Agreement, which states that the insured:

> agrees that such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in my favor which I have made or shall hereafter make or obtain on account of this accident against any person or organization to whom the Liability Coverage provided by this automobile insurance policy shall apply....

Aetna provided no written claim guideline or provision in any claim manual which superseded the policy language, the provision in its claims procedure manual, or any written guideline stating the waiver of the illegal provision in its policy or that it waived the provision of subsection (a) of the Auto-Rite Agreement. Aetna also failed to show that it provided an adequate procedure to prevent erroneous denial of claims.

The Fifth Circuit has specifically addressed the issues in this case in *Richards v. Allstate Ins. Co.*, 693 F.2d 502 (5th Cir. 1982). In *Richards*, Larry Richards filed a diversity suit against Allstate Insurance Company, seeking actual damages for injuries sustained in an accident, as well as punitive damages for Allstate's bad-faith refusal to honor his claim for those injuries. At trial, the jury awarded plaintiff $2,500.00 as compensatory damages and $750,000.00 as punitive damages. The district judge ordered a remittitur of punitive damages to $375,000.00, which Richards accepted. On appeal, the Fifth Circuit affirmed, stating:

Mississippi Law requires all automobile insurance policies to provide at least $10,000 coverage for personal injuries sustained in accidents caused by motorists who have no insurance. *See Miss. Code Ann.* § 83–11–101. The focal point of this litigation is Exclusion 2 of the policy issued by Allstate to Richards, which attempted to limit such coverage. This provision, which was for many years part of Allstate's standard Mississippi automobile policy, totally excluded from uninsured motorist coverage injuries suffered by an insured while occupying a vehicle owned by him but not specified as insured under his policy.

Allstate retained Exclusion 2 in its standard policy until 1981 despite the fact that in 1973 the Mississippi Supreme Court struck down a similar exclusion in another company's policy in *Lowery v. State Farm Mutual Automobile Insurance Co.*, 285 So.2d 767 (Miss.1973). Allstate officials admittedly were aware of the *Lowery* decision and its fatal effect on Exclusion 2. They did not, however, delete the exclusion from their standard policy. Nor did they make any effort to inform their insureds or their sales agents of the effect of *Lowery*. Instead, mid-level claims personnel were instructed to honor claims that otherwise would have been denied in reliance on Exclusion 2. Unfortunately, as the result of a series of mistakes, this procedure failed in Mr. Richards' case and his claim was denied.

*Id.* at 504. *Richards* goes on to review negotiations between Allstate's adjusters and supervisors and Mr. Richards' lawyers and those who worked for Mr. Richards' lawyers and states:

> Allstate contends first that this is not a proper case for an award of punitive damages. The leading Mississippi case on punitive damages in an insurance claim setting is *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239 (Miss. 1978). There the court recognized that punitive damages are not to be awarded unless the breach of the insurance contract is attended by an intentional wrong

or such gross negligence as to amount to an independent tort. But the court allowed punitive damages, finding that the company had denied a legitimate claim for a reason clearly contrary to the express provisions of the policy. The court equated gross negligence with a refusal to pay not based on a legitimate or arguable reason.

This circuit has recognized *Veal's* two-part "legitimate or arguable reason" rule to mean that the absence of (1) a justifiable reason, or (2) an arguable basis under Mississippi law, for refusal to pay a valid claim creates a jury issue on punitive damages. *Black v. Fidelity & Guaranty Insurance Underwriters*, 582 F.2d 984, 990–91 (5th Cir.1978). In this case we conclude that under Veal submission of the punitive damages issue to the jury was compelled by the proof.

At trial Richards alleged that three separate but related actions of Allstate justified a punitive award: (1) retention of the invalid Exclusion 2 in the standard Allstate policy; (2) failure to provide an adequate procedure to prevent erroneous denials; and (3) denial of Richards' claim itself. The jury was properly instructed on all three. We need go no further than the first allegation to uphold their verdict under the facts in this record.

As we have noted, the *Lowery* decision in 1973 invalidated Exclusion 2. Although aware of *Lowery*, Allstate decided not to delete the exclusion from its standard policy. Instead, a procedure was established within the claims department that Allstate thought would be adequate to prevent erroneous denial of claims that were valid but for Exclusion 2. . . .

Allstate urges that its procedure was successful in every case except Richards'. Even accepting this as true, this procedure provided no remedy for those policy holders who read Exclusion 2, assumed their injuries were not covered, and failed to file claims. Failure to delete Exclusion 2 in effect represented a corporate decision by Allstate not to inform its policyholders of undisclosed coverage required by Mississippi law. Whether this conduct was sufficiently culpable to justify an award of punitive damages was a question for the jury. The jury obviously believed that it was. *Id.* at 504–05. In *Richards*, Allstate had alleged several justifications for its illegal provision and alleged that all deficiencies were corrected in the policy. However, the Fifth Circuit commented on Allstate's attempt to explain away the illegal provision:

This argument strains credibility. If it were accepted, Allstate could include in its policies any sort of invalid exclusion and then rely on change provision 5 when challenged. This would mean that policyholders, not insurance companies, would bear the burden of keeping abreast of changes in the law. Clearly this is not the intent of Mississippi's insurance code.

Exclusion 2 as written and as retained in Allstate's policies from 1973 until well after 1977 was invalid under *Lowery*. Under the court's instructions, the jury necessarily found that Allstate's failure to remove Exclusion 2 from its standard automobile policy until after this suit was filed was grossly negligent. This finding is supported by the proof.

*Id.* at 505.

Aetna retains an unlawful provision in its Auto-Rite policy despite the fact that in 1971 (*Harthcock, supra*), in 1973 (*Lowery, supra*), and in 1974 (*Talbot, supra*), the Mississippi Supreme Court has stricken down similar exclusions in the policies of other companies. Aetna continues to retain the provision in its policy, buttressed by a claims procedures manual which dictates that adjusters enforce the provision, and buttressed further by the requirement that its insureds sign the agreement to enforce the illegal provision as a condition precedent to payment of med-pay benefits. Aetna not only retains the provision in its policy, it continues to insist on enforcement of the provision, as supervisor Meek instructed claim representative Riddick, "No med pay Auto-Rite agreement—no pay medical," and as district supervisor Johnny

Dollar instructed claim representative Edwards, "Remember, you don't double pay the medical—once it's paid under med pay it's not paid under AU." Aetna officials admittedly were aware of *Talbot* and its effects on the exclusion (paragraph (e) under "III. Limits of Liability"). Aetna not only failed to inform its insureds of the effect of *Talbot*, but continued to insist that its insureds participate in enforcement of the illegal provision, despite *Talbot*.

Aetna's conduct evidences its total disregard for the laws of the State of Mississippi and its total disregard for the rights of its insureds under those laws.

It is the opinion and finding of this Court that the actions on the part of Aetna Casualty & Surety Company in maintaining the illegal provision in its policy for more than eleven years after the Mississippi Supreme Court had declared similar provisions to be invalid and in maintaining a procedure in its claims manual (which was being used in Mississippi at the time of the initial adjustment of this file) which instructs Aetna's adjuster to enforce the illegal provision of its policy, constitutes gross and willful negligence on the part of Aetna and entitles Plaintiffs to punitive damages. It is further the opinion of this Court that the actions of Aetna were attempts to reduce the uninsured motorist coverage by amounts of payments made under the medical payments coverage of the policy in question. The actions of Aetna were in violation of Mississippi law, and constitute willful and gross negligence and constitute an intentional and independent tort. The Court is further of the opinion that the Defendant, Aetna, has acted in a careless and reckless manner with disregard for the rights of Plaintiffs as insureds under its own policy. In *Richards, supra*, the Fifth Circuit stated the policy on punitive damages as follows:

> Punitive damages are awarded not as compensation to the plaintiff but as "punishment for the wrongdoing of the defendant and as an example so that others may be deterred from the commission of similar offenses...." *Snowden*

*v. Osborne*, 269 So.2d 858, 860 (Miss. 1972) ... See *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d at 249. An additional consideration in determining whether a punitive award is excessive is whether the plaintiff has performed a public service by bringing the wrongdoer to account. *See Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 151, 141 So.2d 226 (1962). Here Richards' suit has benefited all Allstate policyholders by directly causing deletion of Exclusion 2 from the standard Mississippi policy

*Id.* at 505–06.

The Court concludes that the Plaintiff, Shirley M. Tucker is entitled to a judgment against Aetna in the amount of $1,708.92 under the medical payments coverage and in the amount of $20,000.00 under the uninsured motorist coverage.

Had Plaintiff and her counsel been more interested in submitting sufficient medical information to justify payment of her claim and less interested in building a punitive damage claim, the Court would have been inclined to award a substantial punitive damage sum. However, to do so in this case would unjustly enrich the Plaintiff. Notwithstanding the Plaintiff's intransigence in this case, the Defendant has maintained an illegal policy provision in its policies and has sought to enforce it in this case. The Court is of the opinion that an award of punitive damages in twice the amount of actual damages would fulfill the public policy of deterring such wrongful conduct of the Defendant in the future without unduly rewarding the Plaintiff for her conduct which contributed to this result. Accordingly, the Plaintiff is entitled to $43,417.84 as punitive damages.

A separate judgment in the total amount of $65,126.76 pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered by this Court with this Order.