FRED W. PETTID, BY AND THROUGH HIS FATHER AND NEXT FRIEND, FRED J. PETTID, APPELLEE, V. MICHAEL EDWARDS, APPELLEE, WESTERN CASUALTY AND SURETY COMPANY, INTERVENER-APPELLANT.

240 N. W. 2d 344

Filed April 1, 1976. No. 40273.

Pilcher, Howard & Dustin, for intervener-appellant.

John J. Higgins and J. Patrick Green, for appellee Pettid.

Paul E. Watts, for appellee Edwards.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This case involves a controversy concerning the policy limits under the medical payments coverage and uninsured motorists coverage of an automobile liability insurance policy issued to the plaintiff by the intervener, the Western Casualty and Surety Company. There is no dispute concerning the facts.

On February 19, 1973, Fred W. Pettid, a minor 8 years of age, was crossing 76th Street in Omaha, Nebraska, as a pedestrian when he was struck by an automobile operated by Michael Edwards. As a result of the accident Fred W. Pettid sustained fractures of the right clavicle, right humerus, and left femur; a laceration of the left neck; and a cerebral concussion. His medical and hospital expenses amounted to $3,179.55. This action was commenced against Michael Edwards on June 15, 1973, by Fred J. Pettid, as father and next friend of Fred W. Pettid, to recover the damages sustained by Fred W. Pettid in the accident.

The automobile which was being operated by Michael Edwards at the time of the accident was insured by the Great Plains Insurance Company, but the policy contained an endorsement specifically excluding coverage as to Michael Edwards. As a result, Michael Edwards was an uninsured motorist at the time of the accident.

On the date of the accident an automobile liability insurance policy issued to Fred J. Pettid by the intervener was in force. The policy provided both medical payments coverage, Coverage "C," and uninsured motorist coverage, Coverage "K."

The intervener was allowed to intervene in this action to protect its interest under the uninsured motorist coverage of its policy. Thereafter, the action proceeded as a suit upon its policy.

The policy issued by the intervener insured two automobiles owned by Fred J. Pettid, a 1969 Pontiac station wagon and a 1970 Pontiac 2-door hardtop. The policy provided medical payments coverage, in the amount of $1,000 for each person, and uninsured motorist coverage, in the amount of $10,000 for each person, for each automobile and separate premiums were charged for each coverage for each automobile.

Paragraph 5 under "Conditions" in the policy provides in part as follows: "5. Limits of Liability: Regardless of the number of automobiles to which this policy applies: * * * Coverage C: The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of The Western's liability for all expenses incurred by or on behalf of each person, including each insured, who sustains bodily injury as the result of any one accident. * * * Coverage K: The limit of liability for coverage K stated in the declarations as applicable to 'each person' is the limit of The Western's liability for all damages because of bodily injury sustained by one person as the result of any one accident * * *."

The intervener contends its liability is limited to $1,000 under the medical payments coverage and $10,000 under the uninsured motorist coverage. Its tender of those amounts to the plaintiff was refused. The plaintiff contends the maximum liability of the intervener is $2,000 under the medical payments coverage and $20,000 under the uninsured motorist coverage.

The trial court found the plaintiff was entitled to recover $18,500 and made no allocation of the judgment between the coverages involved. The intervener has appealed. There is no cross-appeal.

The medical payments coverage provided in the inter-

vener's policy is in the nature of a limited accident policy. In general, the insurer agrees to pay reasonable expenses incurred within 1 year of the date of the accident by each person who sustains bodily injury caused by accident while occupying the automobile, or to each insured who sustains bodily injury caused by accident while occupying or being struck by an automobile. It is a coverage provided voluntarily by the insurer and is strictly a matter of contract between the parties.

The parties to an insurance contract may contract for any lawful coverage and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N. W. 2d 721. An insurance policy should be considered as any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N. W. 2d 126.

The plain language of the policy in this case limited the liability of the intervener to the limit stated in the declarations as applicable to each person, *regardless of the number of automobiles to which the policy applied.* It is difficult to see how the intervener could have stated more clearly the limit for medical payments coverage would be $1,000 per person per accident although the policy might apply to more than one automobile. In view of the language used the plaintiff could have no reasonable expectation that the policy did not mean exactly what it said.

In determining the question concerning the uninsured motorist coverage an additional consideration is involved. Section 60-509.01, R. R. S. 1943, provides that: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for de-

livery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 60-509, under provisions approved by the Director of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; * * *." We have said the purpose of the statute is to give a person injured by an uninsured motorist the same protection he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133; State Farm Mut. Auto. Ins. Co. v. Selders, 187 Neb. 342, 190 N. W. 2d 789.

The requirement of the statute is that every automobile liability insurance *policy* include uninsured motorist coverage with limits as set forth in section 60-509, R. R. S. 1943, unless such coverage is rejected by the insured. There is no requirement in the statute that if coverage is provided for more than one automobile in a single policy, each coverage shall be considered as if it were provided by a separate policy.

We have held that the limits of uninsured motorist coverage cannot be reduced by other coverages in the policy, or by other insurance or excess escape clauses, and that where separate policies insuring different automobiles are issued to the same insured, the insured is entitled to the benefit of the full coverage in each policy. Stephens v. Allied Mut. Ins. Co., *supra*; Bose v. American Family Mut. Ins. Co., 186 Neb. 209, 181 N. W. 2d 839; Protective Fire & Cas. Co. v. Woten, 186 Neb. 212, 181 N. W. 2d 835. Essentially, the question in this case is whether the insurer can by appropriate language limit its liability in a single policy to the limits required

by statute even though the policy insures more than one automobile.

In extensive briefs the parties have discussed in detail many of the decisions from other jurisdictions which have considered the question. The cases are in sharp conflict. In Weemhoff v. Cincinnati Ins. Co., 41 Ohio St. 2d 231, 325 N. E. 2d 239, the Supreme Court of Ohio held the requirements of the statute are met when the minimum limits are provided. The court further held the statute did not require coverages in one insurance policy to be compounded if more than one vehicle was afforded uninsured motorist protection. The court noted, however, that separate policies would allow the coverages to be "stacked."

In Hilton v. Citizens Ins. Co. of New Jersey (Fla. App.), 201 S. 2d 904, in construing a policy insuring two vehicles and containing language similar to that issued by the intervener, the Florida Court of Appeals said: "The insurance policy on which plaintiffs base their claim for judgment clearly provides that regardless of the number of vehicles insured thereunder, or the number of insureds who may sustain damages in any one accident, the limit of the company's liability shall be the amount set forth in the declarations clause of the policy. This amount is shown to be the sum of $20,000.00. To hold with the contention of appellants would amount to rewriting the clear and unambiguous terms of the insurance policy sued upon and to impose on appellee twice the amount of liability it agreed to assume for the premium charged in exchange for the coverage granted."

In Schelfo v. Government Emp. Ins. Co., 387 F. Supp. 108, affirmed 506 F. 2d 16, the policy insured three automobiles and contained language similar to that issued by the intervener. The Indiana statute was almost identical with the Nebraska statute. Applying Indiana law, the limitation of liability was held enforceable and the inclusion of a second and third automobile did not

enlarge the policy limits. The court distinguished cases involving separate policies. To the same effect, see Miller v. Hartford Acc. & Ind. Co., 506 F. 2d 11.

Representative of the cases which have held the insured is entitled to multiple coverages where more than one automobile is insured under the same policy are Great Central Ins. Co. v. Edge, 292 Ala. 613, 298 S. 2d 607, and Wilkinson v. Fireman's Fund Ins. Co. (La. App.), 298 S. 2d 915. In the Edge case the limitation of liability clause was held ineffective, primarily upon the basis that separate premiums had been charged for each automobile insured. In the Wilkinson case two policies had been issued, each policy insuring three different automobiles. The court held the statute required uninsured motorist protection in all insurance issued "with respect to *any* motor vehicle" and permitted "stacking" of the coverages for all six automobiles.

After considering the various authorities, we have concluded the Nebraska law does not prohibit a limitation of liability by clear language where the minimum limits required by statute are provided in each policy issued.

The judgment of the District Court is reversed and the cause remanded with directions to enter judgment for the plaintiff and against the intervener in the amount of $11,000. Since the judgment does not exceed the amount tendered by the intervener, the plaintiff is not entitled to an allowance for attorneys' fees.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I dissent. If this case were one of first impression not controlled by valid binding precedent, I would have no hesitancy in joining in the majority opinion. However, I believe it is controlled by our opinion in Bose v. American Family Mut. Ins. Co., 186 Neb. 209, 181 N. W. 2d 839. Whether the uninsured motorist coverage by which two automobiles are insured is provided in one policy or in two is not significant, and that is the only

distinction between this case and Bose v. American Family Mut. Ins. Co., *supra*.

McCowN, J., dissenting.

Bose v. American Family Mut. Ins. Co., 186 Neb. 209, 181 N. W. 2d 839, is controlling here unless it can be distinguished. The majority opinion distinguishes this case from Bose on one ground only. In this case there was only one insurance policy covering two vehicles while in Bose there were two policies covering two vehicles. In making that distinction the majority opinion also adopts a strict and literal interpretation of section 60-509.01, R. R. S. 1943, which is in conflict with the liberal construction mandated by Bose and other cases.

In Protective Fire & Cas. Co. v. Woten, 186 Neb. 212, 181 N. W. 2d 835, this court said: "Our uninsured motorist law was enacted for the benefit of the innocent victim of the financially irresponsible motorist, and is to be liberally construed to fully accomplish that purpose." We also said: "It is obvious to us that it is undesirable to permit an insurance carrier to satisfy a statutory requirement by a policy provision that reduces or eliminates liability in those instances where its insured is not fully indemnified. We have no quarrel with provisions to prevent overcompensation, but where, as here, defendants' damages exceed the possible liability, to allow the insurer to escape or limit liability is to pervert the intent of the statute."

In Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133, we said: "The general rule is that an insurer may not limit its liability under uninsured motorist coverage by set offs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage."

In Bose, we said: "The letter of the statute prohibits issuance of a policy without uninsured motorist cover-

age subject to exceptions of no consequence here. Although a literal interpretation does not support defendant's position, we consider the spirit of the statute * * *."

Section 60-509.01, R. R. S. 1943, provides in part: "No policy insuring against loss * * * arising out of the ownership, maintenance or use of a motor vehicle shall be delivered * * * with respect to *any* motor vehicle registered or principally garaged in this state unless coverage is provided therein * * * in limits * * * set forth in section 60-509" for protection against uninsured motorists. (Emphasis ours.)

The interpretation adopted by the majority opinion makes the amount of statutorily required uninsured motorist coverage dependent upon the number of liability policies issued to the insured instead of on the number of vehicles insured or the number of premiums paid. In this connection it should be noted that the premium for uninsured motorist coverage on each of the two vehicles listed in the policy here was identical and that each premium was the same as it would have been had there been separate policies issued on each of the vehicles. It should be noted also that the insured was a pedestrian when struck by the uninsured motorist and neither of the vehicles actually insured here was involved.

The majority holding here limits the required uninsured motorist coverage to $10,000 whenever a single policy insures more than one vehicle. Aside from semantics and the technical niceties of policy provisions, in this case that holding of necessity determines either that each of the vehicles had only $5,000 of uninsured motorist coverage or that one vehicle had $10,000 of uninsured motorist coverage while the other had none. In either case, the minimum uninsured motorist coverage required by statute "with respect to any vehicle" did not apply to one or both of the vehicles here.

The holding of the majority opinion reads section 60-509.01, R. R. S. 1943, as requiring uninsured motorist

coverage in the statutory minimum amount of $10,000 and requires that amount of coverage to be allocated or divided between the number of vehicles insured under the same policy. That interpretation ignores the fact that the statute refers to "a motor vehicle" and "any motor vehicle," and that the term is only singular and not plural.

The majority holding also disregards the fact that separate premiums were paid and charged for the uninsured motorist coverage on each vehicle and Bose specifically held that under such circumstances the reasonable expectations of the insured would be defeated if policy limits were decreased or prorated. Where the insured pays the premium for uninsured motorist coverage in the minimum amount on each of two vehicles but receives only one policy from the insurance company covering both vehicles, that fact ought not to reduce the coverage which he would have had had the insurance company issued separate policies. Such a result is neither just nor reasonable and, in my opinion, is in direct conflict with our prior decisions.

WHITE, C. J., and CLINTON, J., join in this dissent.