**Lillian B. LEMOI et al.**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY et al.**

**No. 80–538–Appeal.**

Supreme Court of Rhode Island.

Dec. 17, 1982.

759

Paul P. Baillargeon, Paul P. Baillargeon, Inc., Woonsocket, for petitioners.

Carroll, McHugh & Pirraglia, John G. Carroll, Providence, for respondents.

OPINION

KELLEHER, Justice.

This Superior Court civil action involves a suit on a Century Auto Policy issued by Nationwide Mutual Insurance Company (Nationwide), in which the plaintiff, Lillian B. Lemoi (Lillian), seeks to "stack" coverages that provide protection against the uninsured motorist and payment of "medical benefits" and "confinement benefits." A

1. "Stacking" refers to the ability of an insured to recover on duplicate coverages for a single loss suffered by the insured. *McNemee v.*

Superior Court justice, after a hearing, refused to allow any stacking[1] and entered judgment for Lillian and her husband, Richard, both of whom were named insureds in the policy, in the amount of $30,900, which consisted of the $25,000 due under the uninsured-motorist coverage, $5,000 for medical benefits, and $900 representing confinement benefits. When the case came on before us for oral argument, the litigants announced that the uninsured-motorist-coverage controversy had been resolved.

Lillian seeks a double recovery for the medical and confinement benefits because the policy covered two vehicles, a 1977 Dodge and a 1963 Ford, on which separate premiums were charged for medical and confinement benefits. A $9 premium was allocated to the Dodge. The premium allocated to the Ford amounted to $4.80. The benefits are provided under a specific type of coverage entitled "Family Compensation," in which Nationwide agrees to pay

"in accordance with the Schedule below, to or for the benefit of the Policyholder, and while residents of the same household, his spouse, and the relatives of either who by accident suffer bodily injury, sickness, disease or death: (a) while in or upon, entering or alighting from: (i) the described automobile."

Section 1 of the schedule relating to the medical-payment portion of the "Family Compensation" calls for the payment of

"[a]ll reasonable expenses for medical, dental or surgical treatment, ambulance, hospital, professional nursing and prosthetic devices incurred within one year following the accident and caused by it, not to exceed in total for any one person: $5,000."

Section 2 provides for the payment of a daily confinement benefit of $5 for each day within a 180-day period following the accident to anyone who is "continuously and necessarily confined indoors due to the injury, under the care of a licensed physician other than himself * * *."

*Farmers Insurance Group,* 228 Kan. 211, 612 P.2d 645 (1980).

Lillian was injured on June 10, 1977, in the town of Burrillville when the uninsured, Dennis L. Drake, crossed over the center line of the highway and struck the 1963 Ford head on. Lillian's front-seat passenger, Jeannette Paul, was killed as a result of the collision; Lillian was first taken to Fogarty Memorial Hospital but then almost immediately was transferred to Rhode Island Hospital. Her injuries consisted of a compound, depressed fracture of the skull, fractures of the right hip and right forearm, numerous other fractures, permanent loss of vision, trauma to the optic nerve, and permanent facial deformity.[2]

Lillian's counsel, after announcing the resolution of the uninsured-motorist controversy, joined with Nationwide's counsel in submitting the other coverage issues to us on briefs. In Lillian's brief there is but one passing reference to the unresolved issues now before us. The gist of such reference is that any approval of Nationwide's efforts to deny Lillian a double recovery for her medical expenses and confinement benefits would "undermine the pronounced public policy and holdings of this [c]ourt." This observation overlooks the fact that, unlike the uninsured-motorist coverage, there is no statutory mandate that insurers must afford the motoring public an opportunity to purchase coverage for medical expenses, confinement benefits—or even a death benefit, which is also part of Nationwide's "Family Compensation" offering.

There are cases galore involving the issue of stacking[3] medical-payment benefits. A number of these cases have involved policies insuring more than one automobile wherein a separate premium has been paid for the coverage on each vehicle. For the most part, the conclusions reached regarding stacking or no stacking are based on the language found in the specific policy. As the law has developed concerning the stacking of medical-payment coverage, many insurers have fine tuned or "honed" the language of these provisions. *Eckert v. Green Mountain Insurance Co.,* 118 N.H. 701, 394 A.2d 55 (1978). Thus it is that we must examine the provisions of Lillian's policy to see whether Nationwide is in or out of tune with the insurance industry.

In seeking an answer, we need only recall the specific language of the schedule of family-compensation payments and then go on to the limits-of-liability portion of the policy where, in speaking of the specific coverages providing (1) protection for the insured against liability arising from the operation of the insured vehicle, (2) family-compensation benefits, and (3) a comprehensive liability protection that is somewhat in the nature of a miniature homeowners' policy, the policy specifically states:

> "The affording of insurance to more than one person or to more than one automobile * * * shall not operate to increase the limits of the Company's liability."

▬ In *Hughes v. American Universal Insurance Co.,* R.I., 423 A.2d 1171, 1173 (1981), we again noted that an insurance policy is a contract; and if its terms are clear and unambiguous, the parties are bound by the agreement. Here, an examination of the language used by Nationwide in its limitation of liability and of the cases that have allowed stacking because of an ambiguity regarding coverage reveals that Lillian's insurer has maintained a sharp eye on what has happened in the area of medical-payments stacking litigation. It is crystal clear from the precise language of the limits of liability and the language of the schedule of family-compensation payments that Lillian's recovery must be limited to the $5,000 maximum for medical expenses and the $900 ceiling for a 180-day confinement period.

**2.** Another facet of this litigation involved a wrongful-death claim brought by Lillian's husband, Richard, as administrator of the estate of Jeannette Paul. This claim was settled by Nationwide for $15,000. Lillian's suit against the uninsured motorist was also before the trial justice; and after considering evidence concerning the extent of her injuries, he entered judgment in favor of Lillian and against the uninsured motorist for $200,000.

**3.** For a compilation of such cases, see Annot., 21 A.L.R.3d 900 (1968).

A final word to those who would believe that Lillian is entitled to a greater award because of the payment of a "double" premium. It is true that when there are really separate policies, double coverage may be secured, but Nationwide should not be required to pay twice simply because it collected two family-compensation-benefit premiums. The greater the number of vehicles, the greater the risk incurred. That the insurer charged twice for the family-compensation benefits cannot warrant our ignoring the specific language of the limitations clause. A legislative policy may result in the control or regulation of such limitations or premiums charged, but there is no judicial policy that prevents an insurer from charging more when it assumes a greater risk. *Carter v. Boston Old Colony Insurance Co.*, 581 F.2d 1123, 1126 (4th Cir. 1978).

Lillian's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.