Gary B. **FRANK, individually and as husband and personal representative of Linda Frank, deceased, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

No. 60014.

Supreme Court of Oklahoma.

July 8, 1986.

As Corrected July 31, 1986.

Rehearing Denied Oct. 21, 1986.

---

9. *Estate of Smith v. Williams,* 674 P.2d 17, 19 (Okla.1983); *Matter of Estate of Bogan,* 541 P.2d 854, 857 (Okla.1975).

Ernest J. Istook, Jr., Oklahoma City, for appellant.

Jim T. Priest, McKinney, Stringer & Webster, Oklahoma City, for appellee.

OPALA, Justice.

The issues presented are: [1] whether the terms of the medical payment coverage of the automobile insurance policy are ambiguous insofar as they afford benefits on *each* of two vehicles when only one was in the accident giving rise to the claim; and, if they are not found to be ambiguous, [2] whether—as a matter of public policy—the insured is entitled to aggregate the limits of medical payment benefits afforded for each vehicle.

According to the stipulated facts, Gary B. Frank [insured] and his deceased wife, Linda Frank, owned two automobiles and were the named insureds of an automobile insurance policy issued by Allstate Insurance Company [Allstate] which covers both vehicles. Separate premiums were paid for medical payment coverage on each vehicle.[1] While occupying one of their cars, insured and his wife were struck by a vehicle driven by an admittedly negligent uninsured motorist. Linda Frank died as a result of the accident. Insured suffered personal injuries and incurred medical expenses that exceeded his policy limits for medical payment coverage on the vehicle he was occupying when the accident occurred. Allstate tendered the full amount of its liability limit for medical payment coverage on that vehicle. Upon Allstate's refusal to allow insured's claim to the medical payment benefits on his other vehicle—which was not involved in the accident—the insured brought this action.

Allstate's denial of liability for the additional coverage is based upon the following terms of the policy:

"COVERAGE CC—Automobile Medical Payments Insurance

\* \* \* \* \* \*

*Limit of Allstate's liability*

Regardless of the number of automobiles insured, only one of the limits of liability stated in the declarations as applicable to 'each person' is the total limit of Allstate's liability for all expenses incurred by or for each person as the result of any one accident. Further, if the accident involves an owned automobile, then the limit stated in the declarations as applicable to that automobile shall be the total limit of Allstate's liability for each person.

\* \* \* \* \* \*

GENERAL CONDITIONS

\* \* \* \* \* \*

3. *Insurance On Two or More Automobiles*

When two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each,...."

Insured contends that when the limit of liability clause is read in conjunction with the general condition an ambiguity arises, which if construed against Allstate, would entitle him to "stack" his medical payment coverage purchased on each vehicle protected by the policy.

 The quoted limit-of-liability clause states plainly that Allstate's liability for payment of medical expenses is limited to the amount of coverage purchased for and applicable to the insured's "owned automobile" involved in the accident. The general condition, also quoted above, provides that the terms of the policy shall apply *separately* to each automobile insured by the policy. A reading of this condition in conjunction with the limitation clause does not compel us to conclude that the second vehicle's coverage limit may be applied *cumulatively*. Unless ambiguous, an insur-

---

**1.** The general terms of the policy with respect to medical payment coverage provide as follows:
"COVERAGE CC—Automobile Medical Payments Insurance
Allstate will pay all reasonable expenses for necessary medical, dental, surgical, x-ray, ambulance, hospital, professional nursing and funeral services, pharmaceuticals, eyeglasses, hearing aids and orthopedic and prosthetic devices to or for an insured who sustains bodily injury caused by an accident; provided, however, that such insured incurs these expenses, and the above items are actually rendered or furnished, within one year from the date of accident."

ance policy should be construed according to its terms as any other contract.[2]

■ While the insured did pay an additional premium for the medical payment coverage for his other vehicle, that premium was for an *additional and separate* risk of loss which did not occur. Allstate would have become contractually liable for the extra coverage only if the insured's second vehicle had been involved in an accident. Hence, we conclude that, under the facts of this case, the policy terms in question *clearly* and *unambiguously* preclude the stacking of medical payment coverage.

■ Lastly, insured argues that Oklahoma's public policy that authorizes the stacking of uninsured motorist [UM] coverage should apply also to medical payment coverage. We have held that, where multiple premiums have been paid, the extent of *UM coverage* available to an insured is the aggregate limit of the coverages purchased on each vehicle.[3] The UM coverage stacking rule is based upon the public-policy mandate of 36 O.S.1981 § 3636, the statute that specifically governs UM protection. *There exist no statutory or other public-policy requirements which would provide a basis for either invalidating or modifying the medical payment provisions of the insurance policy here in contest.* The matter must simply rest on contract between the insurer and its insured.

The policy under scrutiny provides the insured with both UM and medical payment coverage. Although both types of protection entitle him to receive benefits because of bodily injury, medical payment coverage remains manifestly distinct from the statutorily-mandated UM protection. Entitlement to medical payment coverage does not depend on whether bodily injury is sustained as a result of an uninsured motorist's negligence, and insurance companies are not legally required to offer that form of coverage to their insureds.

Clearly, the circumstances surrounding an insured's bodily injury determine the types of coverage from which an insured may benefit. The mere fact that both medical payment and UM coverage can provide compensation for the same class of harm—bodily injury—does not authorize our extension of the specific legislative mandate for UM coverage to medical payment protection.

We hold that, under the facts of this case, the insured is not entitled to stack the medical payment coverage on both his vehicles.[4] Our decision is consistent with the vast majority of other jurisdictions that have dealt with the stacking of medical payment coverage under similar conditions.[5]

The trial court's judgment is affirmed.

**2.** *Carraco Oil Company v. Mid-Continent Casualty Company,* Okl., 484 P.2d 519, 521 [1971].

**3.** *Keel v. MFA Insurance Company,* Okl., 553 P.2d 153 [1976] and *State Farm Mutual Automobile Insurance Company v. Wendt,* Okl., 708 P.2d 581 [1985].

**4.** In *Aetna Casualty and Surety Company v. State Board for Property and Casualty Rates,* Okl., 637 P.2d 1251, 1256–1257 [1981], the court noted that an insurer may not avoid liability by asserting excess or "other insurance" clauses that deny coverage for which an insured has paid a premium. The court also stated, albeit indirectly, that *those clauses* may not be used to prevent an insured from stacking medical payment coverages. *Aetna* presents no inconsistency with today's pronouncement. There the court addressed the situation where an insurer might attempt to avoid liability for coverage *to which an insured was previously entitled by operation of law or contract.* In the case at bar

the question before us is whether an insured may receive the benefits of coverage *that was neither mandated by statute nor provided by the terms of the contract.*

**5.** *See, e.g., United Services Automobile Association v. Smith,* 57 Ala.App. 506, 329 So.2d 562 [1976]; *Hellman v. Great American Insurance Company,* 66 Cal.App.3d 298, 136 Cal.Rptr. 24 [1977]; *Goodman v. Continental Casualty Company,* 347 A.2d 662, 665 [Del.1975]; *Sullivan v. Royal Exchange Assurance,* 181 Cal.App.2d 644, 5 Cal.Rptr. 878 [1960]; *Hansen v. Liberty Mutual Fire Insurance Company,* 116 Ga.App. 528, 157 S.E.2d 768 [1967]; *Phillips v. Inter-Insurance Exchange of Chicago Motor Club,* 91 Ill.App.3d 198, 414 N.E.2d 226, 228 [1980]; *Chiasson v. Whitney,* 427 So.2d 470 [La.App. 5th Cir.1983]; *Jones v. Allstate Insurance Company,* 429 So.2d 241 [La.App. 3rd Cir.1983]; *Dufour v. Metropolitan Property and Liability Insurance Company,* 438 A.2d 1290, 1293 [Me.1982]; *Nissenbaum v. Liber-*

DOOLIN, V.C.J., and LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

SIMMS, C.J., and HODGES, WILSON and KAUGER, JJ., dissent.

HODGES, Justice, dissenting.

I must dissent from the Court's pronouncement that the insured, Gary B. Frank (appellant), is not entitled to aggregate ("stack") medical payment insurance coverage limits of an automobile liability policy insuring more than one automobile where the policy terms preclude stacking.

Although this Court has not addressed itself before today to stacking in the context of medical payments coverage, my view is in accord with many other jurisdictions. *E.g., Alabama Farm Bur. Mut. Cas. Ins. Co. v. Presley,* 384 So.2d 122 (Ala.Civ.App.1980); *Kansas City Fire & Marine Ins. Co. v. Epperson,* 234 Ark. 1100, 356 S.W.2d 613 (1962); *Central Surety and Ins. Corp. v. Elder,* 204 Va. 192, 129 S.E.2d 651 (1963); *Southwestern Fire & Casualty Co. v. Atkins,* 346 S.W.2d 892 (Tex.Civ.App.1961). *See also,* 21 A.L.R.3d 900.

ty Mutual Insurance Company, 16 Mass.App. 996, 454 N.E.2d 922 [1983]; *State Farm Mutual Automobile Insurance Co. v. Scitzs,* 394 So.2d 1371 [Miss.1981]; *Tucker v. Aetna Casualty & Surety Company,* 609 F.Supp. 1574, 1579–1580 [D.C. Miss.1985]; *Hempen v. State Farm Mutual Automobile Insurance Company,* 687 S.W.2d 894 [Mo.1985]; *Pettid v. Edwards,* 195 Neb. 713, 240 N.W.2d 344 [1976]; *DeBerry v. American Motorists Insurance Company,* 33 N.C.App. 639, 236 S.E.2d 380 [1977]; *Wachovia Bank and Trust Company v. Westchester Fire Insurance Company,* 276 N.C. 348, 172 S.E.2d 518 [1970]; *Eckert v. Green Mountain Insurance Company, Inc.,* 118 N.H. 701, 394 A.2d 55 [1978]; *Auto-Owners Mutual Insurance Company v. Lewis,* 10 Ohio St.3d 156, 462 N.E.2d 396, 400 [1984]; *Karabin v. State Automobile Mutual Insurance Company,* 10 Ohio St.3d 163, 462 N.E.2d 403 [1984]; *Pusti v. Nationwide Mutual Insurance Co.,* 415 Pa. 318, 203 A.2d 660 [1964]; *Bishop v. Washington,* 331 Pa.Super. 387, 480 A.2d 1088 [1984]; *Lemoi v. Nationwide Mutual Insurance Company,* 453 A.2d 758 [R.I.1982]; *Nationwide Mutual Insurance Company v. Bair,* 257 S.C. 551, 186 S.E.2d 410 [1972] and *Rodenbough v. Grange Insurance Association,* 33 Wash.App. 137, 652 P.2d 22 [1982]. *Accord, Travelers Insurance Co. v. Estes,* 283 Ark. 61, 670 S.W.2d 451 [1984], in which the Arkansas statute governing medical payment coverage was held to bar stacking; *but see, Duckett v. Allstate Ins. Co.,* 606 F.Supp. 728 [W.D.Okl.1984].

I am persuaded that this Court's strong and clear declaration of public policy concerning stacking of uninsured motorist (UM) coverage should extend to medical payments coverage of the same automobile policy. *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985); *Lake v. Wright,* 657 P.2d 643 (Okla.1982); *Richardson v. Allstate Ins. Co.,* 619 P.2d 594 (Okla. 1980); *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976). If multiple premiums have been paid, then multiple coverage exists for the named insured notwithstanding a disclaimer in the policy. In the instant case, the insured has paid two premiums for medical payments coverage. Such coverage is not attributed to the car causing the damage or which car described in the policy that was occupied by the named insureds. He is not receiving a windfall as he has paid the insurer for this protection. The denial of medical coverage for each separate premium would indeed be a violation of our public policy.

There is no fundamental distinction between uninsured motorist benefits and medical pay benefits. Basic fair play and

Although stacking was permitted in the cases cited below, each considered medical payment provisions different from those before us today; these provisions were held to be ambiguous with respect to the insured's entitlement to multiple coverage. *See, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. v. Presley,* 384 So.2d 122 [Ala.Civ.App.1980]; *Dyer v. Nationwide Mutual Fire Insurance Company,* 276 So.2d 6 [Fla.1973]; *Government Employees Insurance Company v. Sweet,* 186 So.2d 95 [Fla. App.1966]; *Travelers Indemnity Company v. Watson,* 111 Ga.App. 98, 140 S.E.2d 505 [1965]; *Descoteaux v. Liberty Mutual Insurance Company,* 125 N.H. 38, 480 A.2d 14 [1984]; *Allstate Insurance Co. v. Lewis,* 71 Misc.2d 628, 336 N.Y.S.2d 757 [1972]; *Woods v. Nationwide Mutual Insurance Company,* 295 N.C. 500, 246 S.E.2d 773 [1978]; *Dhane v. Trinity Universal Insurance Co.,* 497 S.W.2d 323 [Tex.Civ.App.1973], *aff'd.,* 512 S.W.2d 679 [Tex.1974]; *Virginia Farm Bureau Mutual Insurance Company v. Wolfe,* 212 Va. 162, 183 S.E.2d 145 [1971] and *Moomaw v. State Farm Mutual Automobile Insurance Company,* 379 F.Supp. 697 [S.D.W.Va.1974]. *Accord, Harris v. Employers Mutual Casualty Company,* 33 Colo. App. 314, 519 P.2d 1227 [1974] and *Cameron Mutual Insurance Company v. Madden,* 533 S.W.2d 538 [Mo.1976].

due process dictate that when a person pays a separate premium *twice*, then the insurer is obligated to honor the commitment of double coverage. Public policy will not let the insurer escape that for which it has charged and for which the insured has paid. If the insurer wants to limit medical pay coverage to *one* policy, then it should only require the payment of *one* premium.

I would, therefore, hold that where the insured has paid multiple premiums for medical payments coverage contained in a single policy covering multiple automobiles, the extent of medical payments coverage is the aggregate limit of coverage corresponding to the number of separate premiums paid by the insured regardless of express terms in the policy to the contrary. I would reverse the trial court's judgment and remand the case to the trial court with instructions to enter judgment for the insured.

I am authorized to state that Chief Justice SIMMS, Justice ALMA WILSON and Justice YVONNE KAUGER concur in the views expressed herein.

ALMA WILSON, Justice, dissenting:

On June 19, 1980, the appellant Gary B. Frank and his wife Linda Frank were riding together in their 1973 Toyota automobile. Mr. Frank was driving the car and Mrs. Frank was riding as a passenger when they suddenly became involved in a serious automobile accident. Their car was struck by another vehicle driven by an uninsured motorist who was undisputedly negligent. Mrs. Frank was killed in the accident, and Mr. Frank was severely injured. Specifically, Mr. Frank suffered permanent and disabling brain damage as a result of the accident.

Over the following year, medical expenses due to Mr. Frank's injuries totalled $9,792.23 and the funeral expenses for Mrs. Frank totalled $2,610.00. In 1978, Mr. and Mrs. Frank had purchased an automobile policy from the appellee, Allstate Insurance Company, which was still in effect at the time of the accident. The policy covered both of the Frank's 1973 Toyotas, serial numbers RA21102020 and RN 22038088 respectively. The Franks purchased a complete policy which included not only liability coverage, but also uninsured motorist coverage and medical payments coverage.

The policy shows that the Franks purchased uninsured motorist coverage of $10,000 per person ($20,000 per accident) for each car, and medical payments coverage of $2,000 per person for each car also. The policy coverage sheet shows that separate premiums were paid for each car and reads as follows:

COVERAGES, PREMIUMS AND OTHER POLICY INFORMATION

| COVERAGE DESCRIPTION | 73-TOYOT | 73-TOYOT |
|---|---|---|
| AA & BB BODILY INJURY & PROPERTY DAMAGE LIAB. | $ 74.00 | $ 59.00 |
| SS UNINSURED MOTORISTS | 6.00 | 6.00 |
| CC AUTO MEDICAL PAYMENTS | 10.00 | 10.00 |
| DD AUTO COLLISION | 41.00 | 31.00 |
| HH AUTO COMPREHENSIVE | 14.00 | 8.00 |
| TOTAL PREMIUM BY VEHICLE | $145.00 | $114.00 |
| GOOD DRIVER RATE APPLIED | YES | YES |
| MULTIPLE CAR DISCOUNT | YES | YES |
| COMPACT CAR DISCOUNT | YES | YES |
| TOTAL PREMIUM | | $259.00 |

The policy also contained an explicit clause seeking to prevent the "stacking" of policy limits under the uninsured motorist coverage and also the medical payments coverage.

However, Allstate did "stack" the uninsured motorists coverage and paid a total of $40,000 in conformity with *Keel v. MFA Insurance Company*, 553 P.2d 153 (Okl. 1976), and the line of cases following *Keel*. But Allstate refused to stack the medical payments coverage and reimbursed Mr. Frank only $2,000 for his medical expenses and $2,000 for Mrs. Frank's funeral expenses. The appellant brought this suit seeking an additional reimbursement of $610 for Mrs. Frank and $2,000 for Mr. Frank. Both parties were in agreement as to the facts of this case, and moved for summary judgment. On March 9, 1983, the trial court judge granted summary judgment in favor of the appellee Allstate Insurance Company. The appellant argues on appeal that the clause seeking to prevent "stacking" of the medical payment

coverages is contrary to public policy and therefore void.

The relevant clause of the policy states that:

### COVERAGE CC–AUTOMOBILE MEDICAL PAYMENTS INSURANCE
*Limit of Allstate's Liability*

Regardless of the number of automobiles insured, only one of the limits of liability stated in the declarations as applicable to "each person" is the total limit of Allstate's liability for all expenses incurred by or for each person as the result of any one accident. Further, if the accident involves an owned automobile, then the limit stated in the declarations as applicable to that automobile shall be the total limit of Allstate's liability for each person.

Also relevant is General Condition # 3 which states:

3. *Insurance On Two or More Automobiles*

When two or more automobiles are insured by this policy, the terms of this policy shall apply *separately* to each....

This Court has repeatedly held that clauses that seek to prevent "stacking" of uninsured motorist coverages are void. *Keel v. MFA Insurance Co., supra; Richardson v. Allstate Insurance Co.,* 619 P.2d 594 (Okl.1980); *Lake v. Wright,* 657 P.2d 643 (Okl.1982); *Babcock v. Adkins,* 695 P.2d 1340 (Okl.1984); *State Farm Mutual Auto Insurance Co. v. Wendt,* 708 P.2d 581 (Okl.1985). In *Keel* this Court stated:

"The insured in this case has two policies for which he has paid an additional premium for uninsured motorist coverage. There is no dispute that both policies cover the insured in this accident. The pyramiding or the stacking of the policies is the only dispute. By imposition of both policies, the insured is not receiving a windfall. *He has paid the insurer a premium for this protection, and is only attempting to recover the actual amount of his damages which are within the limits of both policies. On the other hand, the insurer has collected a premium for each policy.*

*In such instance, it would be manifestly unjust to permit the insurer to avoid its statutorily imposed liability by its assertion of 'other insurance clauses' which would deny the insured from receiving that for which he has paid a premium."* Id. at 156.

This Court is clearly committed to the principles of *Keel.* Where insurance premiums have been paid for separate policies, then the insurer must provide coverage under the policy in order to avoid unjust enrichment of the insurer. *State Farm Mutual Auto Insurance Co. v. Wendt,* 708 P.2d at 585.

There is a split of authority in other jurisdictions as to whether the "stacking" principle should also apply to medical payment provisions. *See e.g., Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo.1976); *Pettid v. Edwards,* 195 Neb. 713, 240 N.W.2d 344 (1976). *See also* 25 A.L. R.4th 66 (1983). No explicit Oklahoma authority exists on this issue. However, *Aetna Casualty and Surety Company v. State Board for Property and Casualty Rates,* 637 P.2d 1251 (Okl.1981), appeared to indicate that medical payment coverages should be "stacked" following the general principles of *Keel.* A federal court sitting in Oklahoma has also held that policy provisions prohibiting "stacking" of medical payment coverages are unenforceable. The federal court reasoned that no substantial difference between medical payment provisions and uninsured motorist provisions exists, since in either case, the insurer is attempting to deny coverage to the insured when the insurer has received a premium for such coverage. *Duckett v. Allstate Insurance Company,* 606 F.Supp. 728 (W.D.Okl.1985).

An outstanding commentator on insurance law has discussed the "stacking" issue and found the better view to be in favor of stacking stating that:

A more frequent problem arises in connection with medical expenses, in such a situation, assuming several coverages exist with a similar policy limitation. Again, some courts enforce such limita-

tions literally, and do not permit a stacking of coverage. Others, cognizant of the fact that the company has collected a separate premium upon each vehicle insured, find this to be in violation of public policy, or find the policies to be ambiguous, and permit stacking in any situation. Still others permit stacking where the expenses incurred exceed the amount of such coverage provided by any single policy. Certainly this has some merit where it is recalled that under a medical payments provision, unlike a separate death or dismemberment proviso, the insurer is not liable automatically for a fixed sum but for the payment of expenses incurred up to the limit provided.

In reviewing this matter, the approach of some of the insurers—which include some of the largest in the industry—is quite surprising.... Since actuarial computations demonstrate that the true cost of such coverage is nominal, and a separate premium is paid upon each contract, it is quite surprising that the carriers do not voluntarily, and cheerfully, permit a stacking of such coverage. In most of such cases, the medical expense will be less than the limits of the first of these policies; if the expense is greater, the insured is in need of access to the funds promised, and it ill behooves his insurer, which cheerfully collected his premiums, to assert a defense which means so little in terms of total dollars to it. Appleman, *Insurance Law and Practice* § 4902.55 (1981).

1. *Biggs v. State Farm Auto. Ins. Co.*, 569 P.2d 430, 433 (Okla.1977).

2. Title 36 O.S.1981 § 3636(A)(B) provides:
 "(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section.
 (B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally

I agree that provisions seeking to prohibit "stacking" of medical payments coverage are invalid where the medical expenses incurred exceed the amount of coverage provided by a single policy. The principle involved here is the same as in the uninsured motorist case of *Keel.* If an insured pays more than one premium, an insured is entitled to "stack" coverages. To do otherwise would allow unjust enrichment for the insurer, since the insurer would then receive payment and provide no coverage.

The judgment of the trial court should be reversed and the case remanded to the trial court with instructions to enter summary judgment in favor of the appellant.

I am authorized to state that SIMMS, C.J. and KAUGER, J. join the views expressed herein.

KAUGER, Justice, dissenting.

The stated purpose of the Uninsured Motorist statute is to protect these who are legally entitled to recover from the owner or operators of uninsured vehicles.[1] According to 36 O.S.1981 § 3636 no policy insuring against loss resulting from liability imposed by law for bodily injury or death shall be issued *unless* it provides *coverage therein or supplemental thereto* for the protection of persons insured thereunder who are legally entitled to recover *damages* from the owner or operators of uninsured motor vehicles because of bodily injury, *sickness, disease* or *death* resulting therefrom.[2]

entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorist coverage shall be upon a form approved by the State Board for Property and Casualty Rates as otherwise provided in the Insurance

In *Keel v. MFA,* 553 P.2d 153, 156 (Okla. 1976) we allowed stacking of uninsured motorist coverage holding that "other" insurance or excess escape clauses were void. *Keel* was premised on the rationale that such clauses were repugnant to § 3636 and foreclosed by public policy considerations because, among other things, the insured had paid a premium to the insurer and thus had a legitimate expectation of coverage. In *Brown v. United States Auto. Ass'n.,* 684 P.2d 1195, 1198 (Okla.1984) we reiterated and reinforced the *Keel* philosophy holding that insurance policy provisions and definitions which purport to condition, limit, or dilute the provisions of the uninsured motorist statute are void and unenforceable.[3]

Title to 36 O.S.1981 § 3602[4] echoes general contract law by providing that an insurance policy includes all its clauses. Title 15 O.S.1981 § 157 dictates that the whole of a contract is to be taken together to give effect to every part with each clause assisting in interpretation of the others.[5] Title 15 O.S.1981 § 158[6] provides that even if there are several contracts relating to the same matters between the same parties which are made substantially one transaction, the contracts are to be construed together.

The policy under consideration parrots § 3636—the insurer agreed to pay all sums the insured was entitled to recover as damages for bodily injuries, sickness, disease or death by the accident. Section II of the policy, the purported uninsured motorist clause, provides protection against bodily injuries caused by drivers of uninsured automobiles. Section II requires persons making a claim for bodily injuries under the policy to submit written proof, under oath if required, including full particulars of the nature and extent of the injuries and treatment. On the other hand, Section IV of the policy the purported medical payment clause limits the amount of payment and the time in which reimbursement may be received for treatment rendered—*but* it does not require submission of a claim for recovery of medical expenses. This requirement is found under the General Conditions No. 8. Obviously these clauses were intended to exist coextensively and of necessity must be construed coequally.

Section 3636 provides coverage for loss and damages resulting from bodily injury and death. Title 25 O.S.1981 § 1[7] and 15 O.S.1981 § 160[8] provides that words used in any statute are to be understood in their ordinary sense. It is indisputable that damages for bodily injury include medical

Code and may provide that the parties to the contract shall, upon demand of either, submit their differences to arbitration; provided, that if agreement by arbitration is not reached within three (3) months from date of demand, the insured may sue the tort-feasor."

3. The Court also cited *Uptegraft v. Home Insurance Company,* 662 P.2d 681 (Okla.1983); *Lake v. Wright,* 657 P.2d 643 (Okla.1982); *Chambers v. Walker,* 653 P.2d 931 (Okla.1982); *Porter v. MFA Mutual Insurance Company,* 643 P.2d 302 (Okla.1982); *Biggs v. State Farm Mutual Automobile Insurance Company,* 569 P.2d 430 (Okla. 1977); *Cothren v. Emasco Insurance Company,* 555 P.2d 1037 (Okla.1976).

4. Title 36 O.S.1981 § 3602 provides:
 "'Policy' means contract of or agreement for effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof."

5. It is provided by 15 O.S.1981 § 157:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

6. Title 15 O.S.1981 § 158 provides:
 "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

7. It is provided by 25 O.S.1981 § 1:
 "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

8. See also 15 O.S.1981 § 160:
 "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."

bills. Pursuant to 23 O.S.1981 § 3[9] any person who suffers detriment from the unlawful act or omission of another may recover from the person at fault compensation in money damages. According to 23 O.S.1981 § 6,[10] the measure of damages for breach of an obligation not arising from contract is the amount which will compensate for all detriment proximately caused thereby. In the absence of express contrary intent, whenever a word is defined in any statute the same definition is applicable wherever it occurs. 25 O.S.1981 § 2. Loss as defined by 51 O.S.Supp.1984 § 152[11] includes death or bodily injury.

Here, the linchpin is not our decisional law, or even the public policy consideration, rather it is the unambiguous language of the statute and the insurance policy. The language of a contract governs its interpretation,[12] and the courts of this state are bound by the statutory principles of construction of contracts to compare and harmonize the terms of the contract.[13] The holding in *Keel* is just as viable today as it was ten years ago. The legislature could restrict coverage to only one policy—it has not done so; and in fact in 1979, it amended the statute to include "underinsured" motorists. Because the legislature has not narrowed the holding in Keel, there is no latitude in the statute for an insurer to limit its liability through "other insurance clauses."[14] The language in § 3636 and the instant policy is broad enough to encompass medical pay coverage, and because of it, I am not persuaded by citations of authorities from foreign jurisdictions.

If the *Keel* principle is alive and well, stacking must be permitted. If the majority intends to erode or to overrule *Keel*, it should do so directly. Until *Keel* is overruled, I must dissent based on statutory construction, on the language of the policy, and on *stare decisis.*

I am authorized to state that WILSON, J. joins in the views herein expressed.

---

**9.** Title 23 O.S.1981 § 3 provides:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

**10.** Title 23 O.S.1981 § 6 states:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

**11.** It is provided by 51 O.S.Supp.1984 § 152 in pertinent part:

" 'Loss' means death or injury to the body or rights of a person or damage to real or personal property or rights therein."

**12.** Title 15 U.S.1981 § 154 provides:

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

**13.** *Dooley v. Cordes,* 434 P.2d 289, 294 (Okla. 1967).

**14.** *Keel v. MFA Insurance Co.,* 553 P.2d 153, 156 (Okla.1976).