CENTRAL WASTE SYSTEMS, INC., APPELLEE, V. GRANITE STATE INSURANCE COMPANY, APPELLANT, NEBRASKA PROPERTY AND LIABILITY INSURANCE GUARANTEE ASSOCIATION ET AL., APPELLEES.

437 N.W.2d 496

Filed March 31, 1989.   No. 87-542.

Martin A. Cannon, of Matthews & Cannon, P.C., for appellant.

Thomas A. Otepka, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Central Waste Systems.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

BOSLAUGH, J.
This is an action for a declaratory judgment to determine the liability of the defendant Granite State Insurance Company to the plaintiff, Central Waste Systems, Inc., under an excess, or "umbrella," liability insurance policy issued to the plaintiff by the defendant.

On September 12, 1983, Susanne Kosiski was injured as a result of a collision between an automobile she was operating and a truck owned by the plaintiff and operated by Bernie Hathaway, an employee of the plaintiff. On November 14, 1984, Kosiski commenced an action against the plaintiff and its employee to recover damages resulting from the accident.

The defendant's policy issued to the plaintiff insured against liability for property damage and personal injury damages over $500,000, up to a limit of $10 million. Ideal Mutual Insurance Company was the underlying insurer for the plaintiff's liability coverage. The Ideal policy insured against liability for injury and property damage up to $500,000 for any one accident or loss. Ideal Mutual Insurance Company was adjudged to be insolvent on December 26, 1984, and its liquidation was ordered on February 7, 1985. The plaintiff contends that the terms of the defendant's policy require that it "drop down" to provide primary liability coverage in the Kosiski suit.

Both parties filed motions for summary judgment. The trial court found that the plaintiff was entitled to judgment as a matter of law, sustained the plaintiff's motion for summary judgment, and overruled the defendant's motion. The defendant Granite State has appealed.

The issue upon the appeal is purely one of law and involves

the construction of the insurance contract. See *Roth v. Farmers Mut. Ins. Co.*, 220 Neb. 612, 371 N.W.2d 289 (1985). "In construing an insurance contract, the court must give effect to the instrument as a whole and, if possible, to every part thereof." *Cordes v. Prudential Ins. Co.*, 181 Neb. 794, 798, 150 N.W.2d 905, 908 (1967). "[A]n insurance policy is to be construed as any other contract; if its terms are clear, they are to be applied according to their plain and ordinary meaning." *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 807, 381 N.W.2d 117, 119 (1986). "An insurance policy should be considered as any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning." *Pettid v. Edwards*, 195 Neb. 713, 716, 240 N.W.2d 344, 346 (1976).

"The parties to an insurance contract may contract for any lawful coverage and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute." *Id.*

> Insurance contracts will be interpreted in accordance with the reasonable expectations of the insured at the time of the contract, and a reasonable construction should be given so as to effectuate the purpose for which it was made. In cases of doubt, the policy is to be liberally construed in favor of the insured.

*Dale Electronics, Inc. v. Federal Ins. Co.*, 205 Neb. 115, 119-20, 286 N.W.2d 437, 441 (1979). "In resolving any ambiguity in an insurance policy the principle or test is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean." *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 497, 334 N.W.2d 463, 465 (1983).

" '[A]mbiguities must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted. . . . *Complexity is not the same as ambiguity.*' " (Emphasis in original.) *Great Plains Ins. Co., Inc. v. Kalhorn*, 203 Neb. 799, 803, 280 N.W.2d 642, 645 (1979).

The policy issued by the defendant to the plaintiff provided as follows:

## INSURING AGREEMENTS

1. COVERAGE. The Company hereby agrees, according to the terms and conditions but subject to the limitations hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) Imposed upon the Assured by law, or

(b) Assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss" on account of:

(i) Personal injuries including death at any time resulting therefrom,

(ii) Property Damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the world.

II. LIMIT OF LIABILITY. The Company shall only be liable for the ultimate net loss, the excess of either:

(a) The limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances, or

(b) the amount as set out in the declarations as the self-insured retention in respect of each occurrence not covered by said underlying insurances,

(hereinafter called the "Underlying Limits"): . . .

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances by reason of losses paid thereunder, this policy shall

(1) in the event of reduction pay the excess of the reduced underlying limit

(2) in the event of exhaustion continue in force as underlying insurance, subject to all the terms and conditions of this policy. . . .

. . . .

THIS POLICY IS SUBJECT TO THE
FOLLOWING CONDITIONS

. . . .

J. LOSS PAYABLE. Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. . . .

. . . .

S. MAINTENANCE OF UNDERLYING INSURANCES. It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full force during the currency of this policy except for any reduction of the aggregate limit or limits contained therein, solely by payment of claims in respect of accidents and/or occurrences during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy; but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

It is abundantly clear that if the underlying insurer, Ideal Mutual, were not insolvent, the defendant would have no liability until Ideal Mutual's limit of liability was exhausted. The issue is whether upon the insolvency of the underlying insurer, the defendant becomes the primary rather than the excess carrier.

The plaintiff contends that the term "coverage" is not defined in the policy; that the term is ambiguous; and that the policy should be construed to mean that if the underlying insurer is insolvent, then the occurrence was not covered by the underlying policy.

Contrary to the plaintiff's contention, the term "coverage" is defined in paragraph 1 of the insuring agreements. Paragraph 1, which is entitled "COVERAGE," describes the *risks* that the defendant assumes under the policy. Paragraph II, which is entitled "LIMIT OF LIABILITY," restricts the defendant's exposure to the excess of (a) the limits of the underlying

insurances set out in the schedule or (b) the amount of self-insured retention as set out in the declarations. Under the facts in this case, the latter refers only to advertising liability. The former refers to amounts in excess of $500,000. The language of the policy is clear, and it must be given effect in accordance with its plain and ordinary meaning.

This case is similar to *Mission Nat. Ins. Co. v. Duke Transp. Co., Inc.*, 792 F.2d 550 (5th Cir. 1986). In the *Mission* case, the excess policy provided:

> "The Company shall only be liable for ultimate net loss the excess of either (a) the limits of the underlying insurance as set out in the attached schedule [$300,000] in respect of each occurrence covered by said underlying insurance, or (b) the amount as set out in item 2(c) of the Declarations [$10,000] ultimate net loss in respect of each occurrence not covered by said underlying insurance, (hereinafter called the "underlying limits") . . . ."

(Emphasis omitted.) 792 F.2d at 551.

In holding that the insolvency of Northwest, the underlying insurer, did not cause Mission to become the primary carrier, the court said at 552-53:

> "Under the plain language of Mission's policy there is no obligation to pay for any loss which is within the limits of the Northwest policy, that is, until the loss exceeds $300,000. The occurrences involved in these cases were covered by the underlying insurance. Further reduction or exhaustion of the limits of the underlying insurance can only be accomplished under the terms of umbrella policy by payment of losses under the underlying insurance and not by the insolvency of Northwest. See, *Molina v. U.S. Fire Ins. Co.*, 574 F.2d 1176, 1178 (4th Cir. 1978). . . ." . . .

Duke argues that the district court erred in its interpretation of the insurance contract. Duke reads the limitation of liability section as limiting Mission's liability to amounts over the primary coverage only when the primary coverage remains collectible. In the case where the primary insurer collapses, Duke reads the policy as providing "drop down" coverage, i.e., the excess insurer drops down and assumes the primary insurer's

responsibilities.

Duke bases its argument on its interpretation of the words "covered" and "not covered" in subsections (a) and (b) of the limitation of liability section of the Mission policy. Duke interprets "covered" to mean covered by the coverage terms of an underlying policy on which the insured can collect. Mission, and the district court, interpret "covered" to mean covered by an underlying policy without regard to whether the insured can collect from the primary insurer.

. . . .

We believe the term "covered" provides at least as narrow, if not narrower, excess coverage than does the term "inapplicable." Just as the primary insurance coverage in *Continental Marble* remained applicable to the insured so to [sic] does the primary insurance coverage in the instant case cover the occurrences Duke claims that Mission should provide primary coverage for and defend Duke against. The terms of the Northwest policy specifically provide coverage for all of the claims that Duke asserts Mission should provide primary coverage for and defend Duke against.

The cases from outside Louisiana also support this interpretation. The only cases where the courts have found that the excess insurer drops down involve policies where the excess insurer used the terms "inapplicable," "collectible," or "recoverable." *E.g. Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764, 772 (1982) ("recoverable"); *Gros v. Houston Fire & Casualty Insurance Co.*, 195 So.2d 674, 676 (La.Ct.App.1967) ("collectible"); *Macalco, Inc. v. Gulf Insurance Co.*, 550 S.W.2d 883, 896 (Mo.Ct.App.1977) ("inapplicable"). Of course, our ruling in *Continental Marble* establishes, at least until the Louisiana courts advise us otherwise, the interpretation to be given to the term "inapplicable." And the terms "collectible" and "recoverable" are clearly distinguishable from the term "covered." When an excess insurer uses the term "collectible" or "recoverable" it is agreeing to drop down

in the event the primary coverage becomes uncollectible or unrecoverable; on the other hand, when an excess insurer uses the term "covered" or "not covered," it is agreeing to drop down only in the event that the terms of the underlying policy do not provide coverage for the occurrence or occurrences in question.

(Emphasis omitted.)

The plaintiff has cited *Donald B. MacNeal, Inc. v. Int. Fire & Cas. Co.*, 132 Ill. App. 3d 564, 477 N.E.2d 1322 (1985), and other cases which involved policies which used the words "recoverable" or "collectible" in referring to the underlying insurance. These cases are distinguishable and not applicable here.

The plaintiff argues that the defendant could have made its policy more clear by stating that it would not pay anything until the first $500,000 was paid. The language in paragraph J of the conditions does just that. It provides: "*Liability under this policy* with respect to any occurrence *shall not attach unless and until* the Assured, or *the Assured's underlying insurer, shall have paid the amount of the underlying limits* on account of such occurrence." (Emphasis supplied.)

The judgment of the district court is reversed and the cause remanded with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.